UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

EILEEN RIZVI and NUSRAT RIZVI,
   *Plaintiffs*,

v.

BMW FINANCIAL SERVICES NA, LLC,
   *Defendant*.

No. 3:18-cv-1175 (VAB)

**RULING AND ORDER**

On December 3, 2018, the Court ordered Eileen and Nusrat Rizvi ("Plaintiffs") and BMW Financial Services NA, LLC ("BMW FS" or "Defendant") to show cause as to why this case is not moot. Order to Show Cause, dated Dec. 3, 2018 ("Show Cause Order"), ECF No. 10.

For the reasons explained below, the Court finds that this case is not moot, and **ORDERS** the parties to file a joint Rule 26(f) report by **August 2, 2019**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2018, Plaintiffs sued BMW FS, alleging that BMW FS had refused to refund multiple inadvertent overpayments on their auto lease in violation of the Consumer Leasing Act, 15 U.S.C. § 1667 *et seq.*, and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. Complaint, dated July 17, 2018 ("Compl."), ECF No 1, ¶¶ 1–27. Specifically, Plaintiffs allege that BMW FS's policy of retaining overpayments was not clearly and conspicuously disclosed in the lease or any accompanying lease documents, which they allege is required by 15 U.S.C. § 1667, 12 C.F.R. § 213 *et seq.* ("Regulation M"), and 12 C.F.R. § 226 *et seq.* ("Regulation Z"). *See* Compl. ¶¶ 18–23, 24–27.

Plaintiffs also allege state-law claims under the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. 42-110b, and for unjust enrichment.[1] *Id.* ¶¶ 28–33.

On August 15, 2018, BMW FS answered and asserted several affirmative defenses, including mootness. Answer, dated Aug. 15, 2018, ECF No. 7.

BMW FS argued that the case was or would shortly become moot, "inasmuch as (1) as any payments the plaintiffs have made that exceeded the amounts due at the time the plaintiffs made them have been applied to monthly payments that have become due since, and at present, the plaintiffs' account does not have a 'credit' balance; and (2) the lease will end on August 31, 2018 . . . at which time the plaintiffs will be obliged to return the leased car to BMW FS or purchase it pursuant to the terms of the agreement. As such, not only do the plaintiffs not have a 'credit' balance, but depending on the outcome of the end-of-lease inspection and accounting, they might actually be liable for additional amounts for damage to the vehicle, extra mileage, unpaid property taxes, and the like, pursuant to the terms of the lease." *Id.* at 5–6.

On December 3, 2018, the Court ordered the parties to show cause as to why this case is not moot, explaining that mootness is a threshold issue that must be resolved before the Court could proceed to adjudicate the merits of the Complaint. Show Cause Order at 2. The Court noted that: (1) Plaintiffs had admitted, in their Complaint, that the lease was scheduled to end in August 2018, *id.* (citing Compl. ¶ 7); (2) that three months had passed since the lease had ended, *id.*; and (3) that discovery had not yet begun, *id.* Accordingly, the Court ordered the parties to show cause by December 21, 2018 why this case is not moot, and warned that failure to file a response might result in dismissal for lack of jurisdiction.

---

[1] Plaintiffs are proceeding *pro se* in this matter. *See* Compl. ¶ 6.

On December 28, 2018, Plaintiffs moved to disqualify the Court in this case. *See* Motion to Disqualify Judge Victor A. Bolden, dated Dec. 28, 2018 ("Disqual. Mot."), ECF No. 11. Plaintiffs argued, *inter alia*, that the Court could not render an unbiased or impartial decision in this case because it ruled against Plaintiffs in a prior, unrelated case. *See id.*; Affidavit of Nusrat Rizvi in Support of Disqual. Mot., dated Dec. 28, 2018, ECF No. 11-1.

On January 10, 2019, the Court, construing Plaintiffs' motion as a motion for recusal, denied the motion, finding that "Plaintiffs' disagreement with or even disappointment in an earlier ruling . . . does not provide a sufficient basis for recusal." Ruling and Order on Motion for Recusal, dated Jan. 10, 2019 ("Ruling & Order"), ECF No. 12, at 8 (collecting cases). The Court held that it would not refuse to hear this case, but would instead "consider the Plaintiffs' claims in this case anew, in service of its solemn obligations under Article III of the United States Constitution." *Id.* at 9. (citation omitted).

On January 25, 2019, BMW FS responded to the Court's Order to Show Cause, explaining that it had not timely responded, but was submitting a late response in light of the Court's statement in the January 10, 2019 Ruling and Order that it would "consider the Plaintiffs' claims in this case anew[.]" Defendant's Response to December 3, 2018 Order to Show Cause, dated Jan. 25, 2019 ("Def.'s Resp."), ECF No. 13.

In its response, BMW FS indicates that Plaintiffs' lease matured on August 29, 2018. *Id.* at 1. After that date, BMW FS alleges that "Plaintiffs made a payment or payments that resulted in a surplus of $64.75, before accounting for an unpaid disposition fee." *Id.* On November 15, 2018, BMW FS alleges that Mr. Rizvi called BMW FS and requested a waiver of the disposition fee, which BMW FS granted. *Id.* BMW FS alleges it then mailed Plaintiffs a check for $64.75, refunding the surplus balance on the account. *Id.* To substantiate these assertions, BMW FS has

submitted to the Court: (1) a November 16, 2018 letter BMW FS's attorney allegedly mailed to Plaintiffs; and (2) a bank record displaying a copy of a check in the amount of $64.75 issued on November 20, 2018 by BMW FS to Mr. Rizvi. *See* Exs. A & B to Def.'s Resp. The bank record also indicates that the check was cashed on November 27, 2018. *See* Ex. B.

BMW FS argues that because Plaintiffs' account is now closed and Plaintiffs are not owed any money—and because Plaintiffs had not timely responded to the Court's Order to Show Cause to demonstrate otherwise—the case is moot and should be dismissed for lack of jurisdiction. Def.'s Resp. at 2.

On February 7, 2019, Plaintiffs responded to BMW FS's response, arguing that BMW FS's representations were "grossly inaccurate" and that dismissal "would be a serious miscarriage of justice by this Court not to mention fly in the face of precedent set forth throughout the Second Circuit on these exact issues." Plaintiffs' Response to Def.'s Resp., dated Feb. 7, 2019 ("Pls.' Resp."), ECF No. 14, at 1.

Specifically, Plaintiffs argue that BMW FS's "delay in refunding the money owed" to them "not only created an incredible inconvenience for their long-time customers, but these actions also violated the Truth in Lending Act and the Consumer Lease Act because there were no clear disclosures as to what would be done with surplus payments" to their accounts. *Id.* They further argue that BMW FS's "bad faith" caused them "unnecessary trouble and expense, entitling them to reasonable attorney's fees, costs and repayment for the costs of this litigation." *Id.*

## II. STANDARD OF REVIEW

Mootness is a threshold issue that courts must address when changes in circumstances occur that are claimed to moot a case. *See United States v. Juvenile Male*, 564 U.S. 932, 935–36 (2011) (mootness a threshold issue that prevented review of lower court decision on the merits). This review is required because federal courts are courts of limited jurisdiction that, as a constitutional matter, may only adjudicate live cases or controversies. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.' In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy.") (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

A case becomes moot when there is no longer an ongoing injury that can be redressed through judicial action because the "'issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already*, 568 U.S. at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps Int'l Union*, 567 U.S. 298, 307 (2012) (citation and internal quotation marks omitted) (finding that union's offer to refund all past fees plus interest to class members did not moot case where a live controversy remained as to the adequacy of union's refund notice). "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox*, 567 U.S. at 307–08).

## III. DISCUSSION

Where a defendant's "voluntary cessation" of injury-causing conduct is alleged to have mooted a case, the case is not automatically deemed moot; rather, the defendant must show that

the conduct is unlikely to reoccur with respect to the plaintiffs before the court. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (declining to find case moot where city's repeal of objectionable language would not preclude it from reenacting precisely the same provision in the future if district court judgment was vacated as moot, and where city had announced its intention to do so); *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" where defendant "is free to return to his old ways").

The defendant bears a heavy burden in such cases, and must show that "there is no reasonable expectation that the wrong will be repeated." *Grant*, 345 U.S. at 633 (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)); *see Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) ("The heavy burden of persua[ding] the court that the challenged [voluntarily ceased] conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") (citation omitted). This requirement ensures that defendants cannot simply insulate themselves from binding judicial review of conduct that is likely to reoccur. *Id.* at 632 ("The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement."); *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952) ("When defendants are shown to have settled into a continuing practice or entered into a conspiracy violative of antitrust laws, courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.") (internal citations omitted) (quoted in *Grant*, 345 U.S. at 632 n.5).

Finally, while the Supreme Court has held that an unaccepted offer of settlement that has expired does not moot a case, its precedents also indicate that, in individual actions, a defendant's decision to fully pay plaintiffs the amount in controversy, and plaintiffs' acceptance of those payments, will extinguish those monetary claims. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670–72 (2016) (contrasting unaccepted Rule 68 offer cases with earlier cases where the Court found actual tender of full amounts in controversy to plaintiffs had mooted claims for actual damages).

Construing Plaintiffs' *pro se* filing[2] "liberally" and interpreting it "to raise the strongest arguments" that it suggests, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), it appears that Plaintiffs are arguing that, if their claims were adjudicated, they could still be entitled to relief under the Truth in Lending Act and the Consumer Leasing Act. Such relief, they appear to contend, would exceed the $64.75 surplus they were refunded, insofar as it would compensate them for BMW FS's alleged delay in refunding the money.[3] *See* Pls.' Resp. at 1.

---

[2] While Plaintiffs' filing was not a timely response to the Order to Show Cause, the Court nevertheless exercises its discretion to consider the arguments raised therein, in light of the "substantial degree of solicitude" ordinarily shown to *pro se* litigants in courts in this Circuit. The Court finds that the "specific procedural context" here warrants the exercise of a substantial degree of solicitude. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("In sum, relevant precedent indicates that, while a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant.").

[3] Plaintiffs also contend that they are entitled to attorney's fees and costs. Because Plaintiffs are proceeding *pro se*, they would not be entitled to attorney's fees, even if they were to prevail on the merits in this action. *Kay v. Ehrler,* 499 U.S. 432, 435 (1991) ("The Circuits are in agreement, however, on the proposition that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees.") (in context of 42 U.S.C. § 1988); *see also Kurz v. Chase Manhattan Bank USA, NA,* 324 F. Supp. 2d 444, 450 (S.D.N.Y. 2004) (denying award of attorney's fees in context of the Truth in Lending Act); *Belmont v. Assocs. Nat'l Bank (Del.),* 119 F. Supp. 2d 149, 168 (E.D.N.Y. 2000) (same). Moreover, the Supreme Court has recognized that "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs." *Lewis v. Cont'l Bank*, 494 U.S. 472, 480 (1990); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."); *Cabrera v. Nassau Med. Servs., P.C.,* 526 F. App'x 12, 14 (2d Cir. 2013) (holding that where all other issues were settled, plaintiff's claim to $1,000 in attorney's fees did not create a sufficient live case or controversy). Accordingly, the key inquiry before this Court is whether Plaintiffs maintain a concrete interest in the controversy.

The Court agrees.

Under the Consumer Leasing Act and the Truth in Lending Act, plaintiffs may generally recover both actual damages and statutory damages upon demonstrating that a creditor has failed to comply with statutorily-required disclosures. *See* 15 U.S.C. § 1640(a); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("Failure to satisfy the Act subjects a lender to . . . statutory and actual damages traceable to a lender's failure to make the required disclosures."); *see also Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 53–56 (2004) (noting that failure to make required disclosures permits recovery of both actual and statutory damages). The statutorily-required disclosures have been supplemented by further regulations, and plaintiffs may also recover for violations of those regulations. *See, e.g.*, *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 202 (2011) (plaintiff suing for violations of regulations that implement the Truth in Lending Act); *see also Vincent v. Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (plaintiff suing for violation of 15 U.S.C. § 1666(d) and its corresponding regulations).

To the extent that damages remain plausibly recoverable even after a plaintiff's claim that the primary amount giving rise to the dispute has been resolved, that plaintiff maintains the sufficiently "concrete interest, however small, in the outcome of the litigation" necessary for the court to maintain jurisdiction. *Chafin*, 568 U.S. at 172. The Supreme Court has warned of the dangers of "confus[ing] mootness with the merits." *Id.* at 174. Thus, district courts generally are not permitted to settle arguments about the merits of a case—including those that go to the legal availability of relief—at the jurisdictional threshold. *See id.* ("In *Powell v. McCormack* . . . this Court held that a claim for backpay saved the case from mootness, even though the defendants argued that the backpay claim had been brought in the wrong court and therefore could not result in relief. As the Court explained, 'this argument . . . confuses mootness with whether [the

8

plaintiff] has established a right to recover . . . , a question which it is inappropriate to treat at this stage of the litigation.'") (quoting *Powell v. McCormack*, 395 U.S. 486, 500 (1969)) (internal citation omitted); *see also Steel*, 523 U.S. at 89 ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case.").

A claim for relief may, in fact, be "so implausible that it is insufficient to preserve jurisdiction." *Id.* at 174 (citing *Steel*, 523 U.S. at 89); *see Steel*, 523 U.S. at 89 ("[T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'") (quoting *Bell v. Hood*, 327 U.S. 678, 685, 682–83 (1946)). The Second Circuit has recognized this principle. *See, e.g.*, *Barco-Sandoval v. Gonzales,* 516 F.3d 35, 40 (2d Cir. 2008) ("[W]e lack jurisdiction to review any legal argument that is so insubstantial and frivolous as to be inadequate to invoke federal-question jurisdiction . . . . Because Barco-Sandoval's claim falls into this category, we lack jurisdiction to review it.").

But the Second Circuit has repeatedly cautioned that "in cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir. 1996). "If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Id.* (collecting cases); *see also AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 152–53 (2d Cir. 1984) ("W]hen the contested basis of

federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it 'appears to be immaterial and made solely for the purpose of obtaining jurisdiction where such a claim is wholly insubstantial and frivolous.'") (quoting *Bell*, 327 U.S. at 682).

After careful consideration, the Court finds that Plaintiffs may still be entitled to further actual damages or statutory damages under the Truth in Lending Act and Consumer Leasing Act, based on the conduct alleged in the Complaint. *See Chafin*, 568 U.S. at 172 ("[A] case 'becomes moot only when it is impossible for a court to grant nay effectual relief whatever to the prevailing party.'") (quoting *Knox*, 567 U.S. at 307).

Accordingly, the Court finds that this case is not moot.

## IV. CONCLUSION

For the reasons explained above, the Court finds that this case is not moot. Accordingly, the Court **ORDERS** the parties to meet, confer, and file a joint proposed discovery plan and pre-trial schedule by **August 2, 2019**, consistent with Federal Rule of Civil Procedure 26(f) and this Court's pre-trial preferences.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of July, 2019.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge